Eastern District of Kentucky
FILED

SEP 29 2007

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

CIVIL ACTION NO. 06-142-DLB

EDWARD WOOLLUM     PLAINTIFF

vs.     **MEMORANDUM OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION     DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Edward Woollum filed applications for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI) payments on November 15, 2002. (Tr. 50-52, 183-85). Plaintiff alleges he became unable to work on October 22, 2002, due to arthritis and pain with his knees and back. (Tr. 63, 99). His claims were denied initially (tr. 24-27, 187-90) and on reconsideration (tr. 30-32, 192-95). At Plaintiff's request, an administrative hearing was conducted on April 7, 2005, in Cincinnati, Ohio, by ALJ Ronald T. Jordan. (Tr. 196-227). ALJ Jordan issued his written decision on December 21, 2005, in which he concluded that Plaintiff was not disabled under Social Security standards and therefore not entitled to DIB or SSI payments. (Tr. 11-

18). This decision became the final decision of the Commissioner when the Appeals Council denied review on May 26, 2006. (Tr. 2-4).

On July 14, 2006, Plaintiff filed the instant action. Plaintiff filed a Motion for Summary Judgment (Doc. #5), substantially complying with the Court's Order to provide a statement of alleged errors on appeal. Oral argument was held on December 15, 2006. Eric P. Allen, Esq. presented on behalf of Plaintiff; Assistant United States Attorney John S. Osborn, III, presented on behalf of the Commissioner. Having now heard from the parties, the matter is ripe for adjudication.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. See Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. See id. Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. See Her v. Comm'r of Social Security, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of

the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Secretary of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. 13). At Step 2, the ALJ found Plaintiff's degenerative disc disease and bilateral osteoarthritis of the knees to be severe impairments within the meaning of the regulations. (Tr. 13-14). At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 14).

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform light work. Specifically, the ALJ found that Plaintiff can lift/carry and push/pull 20 pounds occasionally, 10 pounds frequently; he can stand and/or walk 6 hours; sit up to 6 hours in an 8-hour workday; frequently balance and stoop; occasionally climb stairs, ramps, ladders and scaffolds; and occasionally kneel, crouch, and crawl. (Tr. 14). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform all of the requirements of his past relevant work as a construction laborer, restaurant dishwasher, material handler, and machine feeder (tr. 16), and so proceeded to the final step of the sequential evaluation.

At Step 5, the ALJ found that there were a significant number of jobs available to Plaintiff in the national and regional economies, despite his limitations. (Tr. 17). This conclusion resulted from testimony by a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age (49 at alleged date of onset and so a "younger" individual), education (limited), past relevant work experience (no material transferable skills), and RFC. (Tr. 213-18). The VE testified that Plaintiff could obtain employment at the light exertional level as a packer, assembler, and cleaner. (Tr. 217). Since these were positions of significant number in both the regional and national economies, ALJ Jordan concluded Plaintiff was not disabled under the Social Security Act. (Tr. 17).

### C.    Analysis

Plaintiff's focus in his appeal is directed to the ALJ's finding that he can perform work at the light exertional level. Woollum complains that this RFC is not supported by any specific medical evidence of record, that essentially the ALJ played doctor and invented Plaintiff's RFC, and accordingly his determination is not supported by substantial evidence.

The medical evidence in this case is not extensive, and there is no treating physician assessment or opinion evidence. Review of the record reflects that after leaving employment in October of 2002 for progressive worsening of his knee problems, Plaintiff did not seek regular medical care because he did not have health insurance. He was seen at the Pike Street Free Clinic once in April, 2002 and once in May, 2002 for his knees (tr. 111-16) but testified that, despite the free care, he did not regularly seek treatment there because they would not take x-rays and instead would merely hands-on examine his knees and tell him to take aspirin. In May and June of 2002 Plaintiff went to the St. Elizabeth

-4-

Hospital emergency room to have his knees checked and fluid drained. (Tr. 117-22, 123-31). X-rays taken at that time of the left knee showed mild osteoarthritis and joint effusion. On February 12, 2003, Woollum went to the University of Cincinnati (UC) emergency room for his knees. (Tr. 132-36, 157-59). X-rays taken then showed moderate bilateral suprapatellar effusion and bilateral genu varum, and mild to moderate arthrosis of the left knee. (Tr. 137). He also went to UC in October of 2003. (Tr. 160-61).

Plaintiff testified his knees swell and become painful after two or three weeks, lasting for four to five days, and that his knees pop when he moves and sometimes give out on him. The only other "treatment" in the record is a recommendation by what appears to be the St. Elizabeth ER physician for Plaintiff to see a particular orthopedic surgeon. Plaintiff testified that he called and tried to make an appointment, but the up-front consultation fee prevented him from seeing the specialist.

As for the other medical evidence of record, the state agency had Plaintiff examined on December 30, 2002, by Dr. C. Herbert Schapera. (Tr. 139-42). His impression was bilateral osteoarthritis. His examination showed normal range of motion and slight crepitus bilaterally but no evidence of swelling. Dr. Schapera did not author a physical RFC assessment. His report, however, was sent to two state-agency reviewing physicians, each of whom completed physical RFC assessments, the first dated January 9, 2003 (tr. 143-50), and the second dated April 29, 2003 (tr. 151-56). Both assessments reflected restrictions and limitations to medium work, lifting/carrying 50 pounds occasionally and 25 pounds frequently, with sitting or standing/walking for up to 6 of 8 hours. These medical assessments were completed prior to Plaintiff's x-rays in February of 2003 at UC, which films showed moderate bilateral effusion and mild to moderate arthrosis of the left knee.

Plaintiff's counsel had his client examined on March 30, 2005, by board certified osteopath and family medicine physician, Dr. Bruce Siegel. (Tr. 163-67). He reviewed the various medical records and performed a hands-on clinical exam of the knees (tr.166), although the records do not reflect that he took x-rays. Dr. Siegel authored a restrictive physical RFC assessment (tr.168-71), limiting Plaintiff to lifting/carrying less than five pounds, standing/walking a maximum of two hours, and sitting a maximum of two hours. Dr. Siegel also examined Plaintiff's low back. As the ALJ notes, this is the first time the record reflects Plaintiff making low back complaints. These later back complaints were not addressed in the earlier agency evaluation by Dr. Schapera nor the two physical RFC assessments by the non-examining consultants. Dr. Siegel noted, with regard to Plaintiff's back, that on examination he had loss of lumbar lordosis and limited bilateral hip flexion and extension.

The most recent medical evidence in the record is a second agency-ordered consultative examination that occurred on May 14, 2005, and was performed by Dr. Kevin Moreman. (Tr. 173-76). Dr. Moreman assessed knee pain and low back pain. (Tr. 175). His exam revealed some crepitus and early arthritic changes, but nothing he thought would limit Plaintiff significantly. X-rays were taken, which he interpreted as showing mild arthrosis of the knees and mild narrowing of the L4-L5 disc space on the lumbar x-ray. (Tr. 175). He prepared a Medical Source Statement of Ability to do Work-Related Activities (Physical) (tr. 178-81) which placed no restrictions on Plaintiff's ability to do work-related activities.

Such was the medical evidence presented to the ALJ. While Plaintiff questions the ALJ's determination of an RFC unsupported by any one particular medical assessment,

he cites no authority that requires the ALJ's RFC determination mirror a medical assessment. It is the function of an ALJ to evaluate a claim based upon the record compiled in connection with an application. See 20 C.F.R. §§ 404.1520, 416.920. This includes evaluating medical proof. Id. §§ 404.1527, 416.927; Webb v. Comm'r of Social Security, 368 F.3d 629, 633 (6th Cir. 2004)("ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [ ] residual functional capacity")(internal quotation omitted). Contrary to Plaintiff's characterization, this is not an ALJ "playing doctor" or inventing an RFC, but rather part of his role and function of evaluating medical proof so as to determine disability. The assessment is based on the overall administrative record, and not simply a rubber stamp selection of a particular medical opinion. Clinker v. Apfel, 2000 WL 1234325 (6th Cir. Aug. 22, 2000)(rejecting argument that ALJ erred by "creating" his own RFC and noting the relevant question is "whether the ALJ's assessment was supported by substantial evidence").

In this case, the ALJ was critical of what he described as the "grossly excessive limitations" opined by Dr. Siegel (tr. 16), in particular his opinion limiting Plaintiff's ability to sit. On the other hand, the most recent examining opinion before the ALJ of Dr. Moreman assessed no limitations or restrictions. It is reasonable to infer the ALJ either believed this assessment to be "grossly restrictive limitations" based on the record, or decided to give the Plaintiff the benefit of the doubt in determining RFC, based upon the record as a whole and consideration of Plaintiff's testimony. The ALJ did not, however, find Plaintiff's testimony entirely credible. His decision reflects specific reasons for this credibility assessment. (Tr. 14-15). In concluding that the medical and other evidence supported at

least light work, which can involve a good deal of walking or standing, the ALJ found Plaintiff's testimony about his daily activities to be significant. Plaintiff testified that he walks a lot for therapeutic purposes, does household chores at his brother's home to earn his keep for allowing him to reside in his basement, and that he would traverse the stairs fifteen to twenty times per day, albeit slowly. This credibility determination as to Plaintiff's subjective complaints rests with the ALJ. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)(per curiam). Credibility, especially with regard to allegations of pain, is crucial to the resolution of a claim. The ALJ's opportunity to observe the demeanor of a claimant is invaluable and should not be lightly discarded. *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)(per curiam); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981).

In sum, this is a close case. And, understandably, the ALJ's finding that Plaintiff is capable of performing light level work is particularly troubling to Plaintiff, since he submits that if he were limited to sedentary level work, he would be viewed as disabled under Grid Rule 201.09. But the substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*)(internal quotes and citations omitted). The scope of the Court's review is limited to an examination of the record only. *Brainard v. Secretary*, 889 F.2d 697, 681 (6th Cir. 1989). The Court does not review the evidence *de novo,* make credibility determinations, nor weigh the evidence. *Id.* Thus, if supported by substantial evidence, the Commissioner's decision must be affirmed, even if the Court would decide the case differently, *see Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994), and even if the claimant's position is also supported by substantial

evidence, see *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In this case, the Court finds that the ALJ's RFC determination is so supported, and the decision must therefore be affirmed.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #5) is hereby **DENIED.**

A Judgment in favor of Defendant will be entered contemporaneously herewith.

Dated this 29th day of September, 2007.



**Signed By:**
*David L. Bunning* DB
**United States District Judge**

G:\DATA\SocialSecurity\MOOs\2-06-142-WoollumMOO.wpd